Sarah J. Spinuzzi (SBN 305658)
Email: sarah@coastkeeper.org
Lauren D. Chase (SBN 324162)
Email: lauren@coastkeeper.org
ORANGE COUNTY COASTKEEPER &
INLAND EMPIRE WATERKEEPER
3151 Airway Ave, Suite F-110
Costa Mesa, CA 92626
Telephone: (714) 850-1965


*Attorneys for Plaintiffs Inland Empire Waterkeeper
& Orange County Coastkeeper*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a program of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California non-profit corporation, | Civil Case No. 8:21-cv-00236-JVS-KES<br><br>**CONSENT DECREE** |
| Plaintiffs,<br>vs.<br><br>CMC STEEL FABRICATORS, INC.<br><br>Defendant. | **(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)** |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiffs Inland Empire Waterkeeper and Orange County Coastkeeper (together, "Plaintiffs" or "Waterkeeper"), and CMC Steel Fabricators, Inc. ("Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a non-profit public benefit corporation;

**WHEREAS**, Inland Empire Waterkeeper is a program of Orange County Coastkeeper;

**WHEREAS**, together, Inland Empire Waterkeeper and Orange County Coastkeeper are dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the Santa Ana River and its tributaries;

**WHEREAS**, Defendant owns and/or operates a rebar fabrication facility at 5425 and 5435 North Industrial Parkway, San Bernardino, California 92407 (the "Facility");

**WHEREAS**, the Standard Industrial Classification ("SIC") code applicable to the Facility is 3449 (Miscellaneous Structural Metal Work);

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ, as amended in 2018 (effective July 1, 2020) (collectively, as amended, and as may be subsequently amended from time to time, the "Storm Water Permit" or the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* (the "Clean Water Act" or the "CWA") and;

**WHEREAS**, the Storm Water Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, (3) when necessary, implement additional BMPs to reduce and eliminate discharges as necessary to comply with any and all applicable receiving water limitations and/or other requirements set forth in the Permit, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on December 4, 2020, Waterkeeper issued a 60-day notice letter (the "Notice Letter") to Defendant, Commercial Metals Company, and Gerdau Reinforcing Steel, their registered agents, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board (the "State Water Board"), the Executive Director of the Santa Ana Regional Water Quality Control Board (the "Regional Water Board"), and the Regional Administrator of EPA Region IX,  alleging violations of the Storm Water Permit and the Clean Water Act at the Facility;

**WHEREAS**, on February 4, 2021, Waterkeeper filed a complaint against Defendant, Commercial Metals Company, and Gerdau Reinforcing Steel (the "Complaint") in the United States District Court, Central District of California (Civil Case No. 8:21-cv-00236) (hereinafter, the "Action");

**WHEREAS,** prior to January 1, 2021, the Facility was owned and operated by CMC Rebar West, formerly known as Gerdau Reinforcing Steel.  CMC Rebar West, a partnership comprised of Defendant and CMC Steel US, LLC, merged into Defendant on January 1, 2021 and no longer exists.  Accordingly, the Parties agree that CMC Steel Fabricators, Inc. is the proper Defendant for purposes of this action and settlement thereof and that Commercial Metals Company and Gerdau Reinforcing Steel shall be dismissed

from the action;

**WHEREAS**, Waterkeeper alleges Defendant is violating the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

**WHEREAS,** Defendant denies it is in violation of the requirements of the Storm Water Permit or the Clean Water Act;

**WHEREAS**, the Settling Parties agree it is in their mutual interest to enter into a Consent Decree in this Action setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and the Complaint without further proceedings;

**WHEREAS**, the Settling Parties agree that all references hereinafter to Defendant's future compliance with the "Storm Water Permit" shall refer to the then-effective version of the Storm Water Permit;

**WHEREAS**, capitalized terms used but not defined herein shall have the meanings ascribed to them in the Storm Water Permit; and

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District.

3.      The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

4.      Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as

1    is necessary for the Court to resolve any motion to enforce this Consent Decree.

2    **I.      AGENCY REVIEW AND TERM OF CONSENT DECREE**

3         6.     Plaintiffs shall submit this Consent Decree to the United States Department
4    of Justice and EPA (collectively, the "Federal Agencies") within three (3) business days of
5    the final signature of the Parties for agency review consistent with 40 C.F.R. § 135.5. The
6    Federal Agencies' review period expires forty-five (45) days after receipt of this Consent
7    Decree by the Federal Agencies, as evidenced by certified return receipts, copies of which
8    shall be provided to Defendant upon request. In the event that the Federal Agencies
9    comment negatively on or object to entry of this Consent Decree, the Settling Parties agree
10   to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within
11   a reasonable amount of time, not to exceed thirty (30) days.

12        7.     Following expiration of the Federal Agencies' 45-day review period,
13   Waterkeeper shall submit the Consent Decree to the Court for entry.

14        8.     The term "Effective Date" as used in this Consent Decree shall be the date of
15   entry by the Court.

16        9.     This Consent Decree shall terminate three (3) years from the Effective Date,
17   unless (i) an Action Plan (as hereinafter defined) is required per paragraph [19] below,
18   based on sampling results from the 2023-2024 reporting year[1], in which case the Consent
19   Decree will terminate upon complete implementation of the measures described in the
20   Action Plan, and/or (ii) if there is an ongoing, unresolved dispute regarding Defendant's
21   compliance with this Consent Decree, in which case the Consent Decree will terminate
22   within fifteen (15) days' notice by the Settling Parties that the dispute has been fully
23   resolved.

24   **II.     COMMITMENTS OF THE SETTLING PARTIES**

25        **A.     Storm Water Pollution Control Best Management Practices**

26        10.    In addition to maintaining the current BMPs at the Facility, Defendant shall
27   develop and implement the BMPs identified herein, as well as any other BMPs necessary

28

---

[1] A "reporting year" is July 1 to June 30.

to comply with the provisions of this Consent Decree and the Storm Water Permit. Specifically, Defendant shall develop and implement BMPs to prevent and/or to reduce contamination in storm water discharged from the Facility consistent with BAT and BCT and/or when necessary to support attainment of water quality standards ("WQS").

11.    <u>BMPs</u>.

11.1.  BMP Work Plan. No later than December 31, 2021, Defendant shall prepare and submit to Waterkeeper for its review and comment, a draft BMP Work Plan describing the advanced BMPs that Defendant will implement on the northern drainage area at the Facility, including and without limitation the installation of vegetated retention/infiltration areas, aboveground or belowground stormwater retention/infiltration facilities, dry wells, increased paving, treatment, or any combination of the foregoing sufficient to treat and/or retain an eighty-fifth (85th) percentile storm on the northern drainage area. Waterkeeper acknowledges that advanced BMPs (a vegetated swale with multiple levels of drain inlet protection) are already installed at both outfalls on the southern drainage area. With the exception of discharges that occur during a storm event that exceeds the 85th percentile, any stormwater discharged from either the northern or southern drainage area shall achieve the values set forth in Table 1 below. Waterkeeper shall have thirty (30) days upon receipt of Defendant's BMP Work Plan to provide Defendant with comments. Within thirty (30) days of receiving Waterkeeper's comments on the BMP Work Plan, Defendant shall accept and incorporate Waterkeeper's comments into the Work Plan, or Defendant shall bear the burden of proof that incorporation of Waterkeeper's comments would be technically infeasible. Defendant shall complete construction or installation of the additional BMPs, or combination of BMPs, in accordance with the Work Plan by no later than October 1, 2022 unless this date is extended by

mutual agreement of the Parties based on a showing of good cause by Defendant.

11.2.  <u>Interim BMPs.</u> By October 1, 2021, Defendant shall develop, implement, and/or enhance the following BMPs at the Facility:

11.2.1.   Install flow cutoff at the end of the northernmost driveway on the southern drainage area to direct runoff from areas of industrial activity through the existing curb cut toward Outfall 2. Ensure that all runoff from the southernmost driveway on the southern drainage area is directed to Outfall 1.

11.2.2.   Ensure dumpsters are closed at all times when not being loaded.

11.2.3.   Provide special instructions and training to employees to clean outdoor work areas at the end of each shift by sweeping or picking up stray pieces of wire and other debris.

11.2.4.   Mechanically sweep all outdoor paved surfaces once per week until the BMPs described in paragraph 11.1 above are fully implemented.

11.2.5.   Deploy filter socks containing metal sorbing biochar at the outfalls on the northern drainage area. Deploy Filtrexx socks at the outfalls on the southern drainage area until existing Filtrexx socks have expired per factory recommended lifecycle, at which point those shall also be replaced with filter socks containing metal sorbing biochar.  Nothing herein shall prevent Defendant from using Filtrexx socks in combination with metal sorbing biochar.

11.3.  <u>Confirmation of Completion.</u> Defendant shall provide Waterkeeper with written documentation demonstrating that the required BMPs have been implemented in compliance with paragraphs [11.1] and [11.2.1] above within fifteen (15) days of completion in each case. Defendant shall

diligently (i) file and pursue all required permit applications for any structural BMPs and (ii) procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

**B.     Storm Water Sampling**

12.     <u>Sampling</u>. The following storm water monitoring procedures shall be implemented at the Facility:

12.1.     <u>Frequency</u>. During the life of this Consent Decree and thereafter in compliance with the Storm Water Permit, Defendant shall collect samples from at least four (4) storm water discharges per reporting year from each of the discharge locations at the Facility provided that at least four (4) Qualified Storm Events, as defined in the Storm Water Permit ("QSEs") occur during the applicable reporting year. QSEs, as defined in the Storm Water Permit, are precipitation events that produce a discharge from at least one (1) drainage area and are preceded by forty-eight (48) hours with no discharge from any drainage area. If a particular QSE does not produce sufficient run-off to cause a discharge from each of the Facility's outfalls, Defendant shall record the lack of discharge in the stormwater sampling visual observation records required pursuant to Section XI of the Permit. Any failure to collect samples as required by this Consent Decree shall be documented and submitted to Waterkeeper via email within five (5) days of the date a sample should have been collected but was not. If, prior to March 1 of a reporting year, Defendant has collected samples from two (2) or fewer QSEs, Defendant shall, to the extent feasible, collect samples during as many QSEs as necessary for the remainder of the reporting year until a minimum of 4 storm events have been sampled. No two (2) samples may be from the same storm event.

12.2.     <u>Documentation</u>. To document the storm water discharge and discharge

location, an employee shall take photographs of the storm water discharge and discharge location when samples are collected (the "Sampling Photographs

12.3.   <u>Parameters</u>. Subject to the provisions of Section XI.C. 7. of the Permit, all samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1.

12.4.   <u>Lab</u>. Except for pH samples, a laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree. Unless otherwise required by the Storm Water Permit, analysis of pH shall be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

12.5.   <u>Detection Limits</u>. Defendant shall require that the laboratory use analytical methods adequate to detect the individual parameters at or below the values specified in Table 1 or the Storm Water Permit, whichever is lower.

12.6.   <u>Holding Time</u>. All samples collected from the Facility shall be delivered to the laboratory and analyzed within the holding times required in 40 CFR Part 136.

12.7.   <u>Results</u>. Defendant shall request that sample-analysis results and associated chain of custody forms be reported to them within thirty (30) business days of laboratory receipt of the sample.

12.8.   <u>Reporting</u>. Defendant shall (i) submit sampling results to SMARTS no later than thirty (30) days from receipt in accordance with the Storm Water Permit and (ii) provide the complete lab results and all Sampling Photographs to Waterkeeper simultaneously as the sampling results are submitted to SMARTS.

**C.   Visual Observations**

13.   <u>Storm Water Discharge Observations</u>. During the life of this Consent Decree,

Defendant shall conduct visual observations during every discharge sampling event at each location where storm water is discharged from the Facility.

14.     Non-Storm Water Discharge Observations. During the life of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each discharge location.

15.     Visual Observation Records. Defendant shall maintain observation records to document compliance with paragraphs [13 and 14] above, and shall provide Waterkeeper with copies of such records within thirty (30) days of receipt of Waterkeeper's written request.

**D.     Employee Training**

16.     Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) a sufficient number of employees at the Facility designated to achieve compliance with the Storm Water Permit and this Consent Decree, and (2) such employees are properly trained to perform the activities required by and to achieve compliance with the Storm Water Permit and this Consent Decree (the "Training Program"). At a minimum, the Training Program shall include the following:

16.1.     Non-Storm Water Discharges. Employees shall be trained on the Storm Water Permit's prohibition of non-storm water discharges so that employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges.

16.2.     The SWPPP and BMPs. Defendant shall train all employees on the SWPPP and, specifically, BMP implementation and/or maintenance, as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water, prevent the discharge of contaminated storm water, and ensure the proper treatment of storm

water at the Facility. This training should include the requirements and additional BMPs outlined in paragraph 11.2 above.

16.3.   <u>Visual Observation</u>. Defendant shall provide training to the members of its Pollution Prevention Team as identified in the SWPPP on how and when to properly conduct and record visual observations.

16.4.   <u>Storm Water Sampling</u>. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree and the Storm Water Permit. The Training Program shall include training sufficient to ensure (i) proper sampling protocols, including chain of custody requirements, are followed at all times and (ii) storm water samples are properly collected, stored, and submitted to a certified laboratory.

16.5.   <u>Training Implementation</u>. Training shall be provided by a Qualified Industrial Storm Water Practitioner (a "QISP," as defined in Section IX.A of the Permit) familiar with the requirements of this Consent Decree and the Storm Water Permit.

16.6.   <u>Language</u>. The Training Program shall be conducted and all training materials shall be made available in the language in which the employee(s) participating in the Training Program are fluent. If necessary to accomplish the foregoing or where translation would otherwise contribute to (i) staff comprehension of the Training Program and/or (ii) compliance with this Consent Decree and the Storm Water Permit, Defendant shall provide translation services at all training sessions and of training materials.

16.7.   <u>Training Program Frequency</u>. The Training Program shall be repeated annually or more frequently as necessary to ensure all relevant employees are familiar with the requirements of this Consent Decree and the Storm Water Permit. All new staff shall receive this training

within thirty (30) days of hiring or sooner if necessary to ensure training is received before assuming responsibilities for compliance with this Consent Decree or the Storm Water Permit.

17.     Training Records. Defendant shall maintain training records to document compliance with this section, and shall provide Waterkeeper with a copy of such records within thirty (30) days of receipt of Waterkeeper's written request.

E.     **Reduction of Pollutants in Discharges**

18.     Storm Water Contaminant Reduction. Defendant shall develop and implement BMPs such that contaminants in storm water discharges from the Facility maintain concentrations that are equal to or less than the values set forth in Table 1 below (the "Table 1 Values"). Failure to achieve Table I values shall not be deemed a violation of the Permit or this Consent Decree so long as Defendant continues to make timely and diligent efforts to further reduce the level of pollutants in the discharges.  Beginning in the 2021-2022 reporting year for the southern drainage area, and in the 2022-2023 reporting year for the northern drainage area and for the remainder of the term of this Consent Decree, any two exceedances of any Table 1 parameter from the same parcel, with the exception of dissolved copper and dissolved zinc, shall trigger the Action Plan requirements set forth in paragraph [19] below.  Nothing in this Consent Decree shall prevent Defendant from eliminating a sampling parameter from Table 1 in accordance with the provisions of Section XI.C.7. of the Permit.

**Table 1. Numeric Values for Storm Water Discharges**

| Parameter | Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | IGP |
| Total Recoverable Copper | 0.0332 mg/L | IGP |
| Total Recoverable Zinc | 0.26 mg/L | IGP |
| Dissolved Copper | 0.013 mg/L | CTR |
| Dissolved Zinc | 0.12 mg/L | CTR |
| Oil and Grease | 15 mg/L | IGP |
| Total Recoverable Aluminum | 0.75 mg/L | IGP |
| Total Recoverable Iron | 1.0 mg/L | IGP |
| N+N | 0.68 mg/L | IGP |
| pH | 6.5 – 8.5 S.U. | Basin Plan |

19.     Action Plan. In the event the requirement to prepare an Action Plan is triggered at the Facility pursuant to paragraph [18] above, Defendant shall prepare and submit to Waterkeeper a plan for reducing and/or eliminating the discharge of the contaminant in question during the next reporting year at the Facility (an "Action Plan"). In any year that an Action Plan is required, such Action Plan shall be submitted by July 1 immediately following the reporting year during which the exceedance occurred.

19.1.     Requirements. Each Action Plan submitted shall include, at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Value(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including storm water treatment or other appropriate measures, that shall be implemented to achieve compliance with the Table 1 Value(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure all BMPs are implemented as soon as possible, but in no event later than October 1 immediately following the submission of the Action Plan, unless a later implementation date is agreed upon by the Parties.

19.2.     Action Plan Review. Waterkeeper shall have thirty (30) days upon

receipt of Defendant's Action Plan to provide Defendant with comments. Within thirty (30) days of receiving Waterkeeper's comments on the Action Plan, Defendant shall accept and incorporate Waterkeeper's comments into the Action Plan, or, alternatively, justify in writing why any comment is not being incorporated. Any disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan and/or Defendant's failure to incorporate Waterkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section [III] below.

20.     When an Action Plan is completed, Defendant shall revise the Facility SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. Defendant shall notify Waterkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Waterkeeper for review and comment as set out in paragraphs [23 and 24] below.

21.     <u>Action Plan Payments</u>. If Defendant is required to submit an Action Plan to Waterkeeper in accordance with paragraph [19] above, Defendant shall make a payment of Five Thousand Dollars ($5,000.00) per Action Plan concurrently with each Action Plan submittal. Such payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

## F.     Storm Water Pollution Prevention Plan

22.     <u>SWPPP</u>.  To the extent necessary, within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP to incorporate the requirements of the Storm Water Permit and this Consent Decree, including but not limited to the following:

22.1.     Identify the individual(s) responsible for compliance with the Storm Water Permit and this Consent Decree, including the positions and

persons responsible for specific areas of compliance (e.g., John Doe: collecting storm water samples) and their backups;

22.2. Revise the facility site map and site description to reflect all discharge locations, all areas associated with ongoing industrial activities, and all other requirements of the Storm Water Permit and this Consent Decree;

22.3. Revise the pollutant source assessment to include all identified pollutants associated with industrial activity at the Facility;

22.4. Revise the monitoring plan to address all pollutants identified in the pollutant source assessment and this Consent Decree;

22.5. Include sample analysis for all applicable pollutants including, at a minimum, those listed in Table 1;

22.6. Satisfy the Storm Water Permit's sampling and monitoring requirements including but not limited to, updating the facility's sample locations;

22.7. Update all BMPs, including, but not limited to, BMPs required pursuant to paragraph [11.2] above;

22.8. Update the Facility's Exceedance Response Action status; and

22.9. Remove or revise the Representative Sampling Reduction assessment(s) to comply with Storm Water Permit requirements.

23. Revising the SWPPP. Defendant shall revise the Facility SWPPP if there are any changes in the Facility's operations, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facility, whether made pursuant to an Action Plan or not, within thirty (30) days of the occurrence of any of the above-listed events.

24. Commenting on Revised SWPPPs. Defendant shall submit each revised SWPPP to Waterkeeper for review and comment within thirty (30) days of its completion. Waterkeeper shall provide comments, if any, to Defendant within thirty (30) days of receipt of the SWPPP. Within thirty (30) days of receiving Waterkeeper's comments on the

SWPPP, Defendant shall accept and incorporate Waterkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or Defendant's failure to incorporate Waterkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section [III] below.

### G.  Compliance Monitoring and Reporting

25.  <u>Site Inspections</u>. Waterkeeper and its representatives may conduct one (1) wet weather site inspection and one (1) dry weather site inspection per year at the Facility during the life of this Consent Decree. In addition, Waterkeeper and its representatives may conduct one additional site inspection upon implementation of the BMP work plan identified in paragraph 11.1 above. In the event of a dispute between the Settling Parties regarding Defendant's compliance with this Consent Decree, and provided a site inspection would be relevant to resolving such dispute, the Settling Parties agree to meet and confer regarding an additional site inspection, which inspection shall not be unreasonably denied.

25.1.  The site inspections shall occur during normal business hours. Waterkeeper shall provide Defendant with forty-eight (48) hours' notice prior to any wet weather site inspection and seventy-two (72) hours' notice prior to any dry weather site inspection. Notice will be provided via electronic mail to the notice recipient(s) designated in paragraph [44] below. For any site inspection requested to occur in wet weather, Waterkeeper shall be entitled to adjust timing during normal business hours or reschedule the inspection for an alternative date during normal business hours in the event that the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. As used throughout this paragraph [25.1], "normal business hours" shall mean and refer to the Facility operating hours as identified in the Facility SWPPP.

25.2.  During the site inspections, Waterkeeper and its representatives shall

be allowed access to the Facility's SWPPP, visual observation records, employee training records, and other monitoring records, reports, photographs, and sampling data for the Facility.

25.3.    During the site inspections, Waterkeeper and/or its representatives may inspect and collect samples of discharges from the Facility and take photos and/or videos related to Storm Water Permit and/or Consent Decree compliance. A certified California laboratory shall analyze samples collected by Waterkeeper and copies of the lab reports shall be provided to Defendant within five (5) business days of Waterkeeper's receipt.  All photographs and videos taken during a site inspection shall be treated as confidential consistent with Defendant's corporate policy generally prohibiting the taking of pictures or videos at its facilities, and shall not be shared with any other person or entity without Defendant's prior written consent.  In addition, within ten (10) days after a site inspection, Waterkeeper shall provide Defendant with an exact duplicate set of any photographs and videos that were taken.

26.    <u>Compliance Monitoring and Oversight</u>. Defendant agrees to partially defray costs associated with Waterkeeper's monitoring of Defendant's compliance with this Consent Decree in the amount of Forty Thousand Dollars ($40,000). Such payment shall be made within forty-five (45) days of the Effective Date.  Payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

27.    <u>Reporting and Document Provision</u>. During the life of this Consent Decree, Defendant shall provide Waterkeeper with a copy of all documents, monitoring and/or sampling data, written communications, and/or correspondence related to water quality at the Facility that are submitted to the Regional Water Board, State Water Board, and/or any Federal, State, or local agency, county, or municipality. Such reports and documents shall be provided to Waterkeeper concurrently as they are sent to the agencies, counties, and/or

municipalities. Any documents, written communications, and/or correspondence related to Defendant's compliance with the Storm Water Permit and/or to storm water quality received by Defendant from any Federal, State, or local agency, county or municipality shall be provided to Waterkeeper within five (5) business days of receipt by Defendant.

**H.  Environmental Mitigation Project, Litigation Fees and Costs, Stipulated Penalties and Interest.**

28.  <u>Environmental Mitigation Project</u>. To remediate the environmental harms alleged to have resulted from the allegations in the Complaint, Defendant agrees to make a payment of Twenty-five Thousand Dollars ($25,000.00) to the Rivers and Land Conservancy, and Seventy-five Thousand Dollars ($75,000) to the Rose Foundation for Communities & the Environment (the "Rose Foundation"), each to fund environmental project activities that will benefit Southern California waters, including restoration and/or preservation of the Santa Ana River watershed. The payments shall be made within forty-five (45) days of the Effective Date. The payment to the Rivers and Lands Conservancy shall be made via check and made payable to "Rivers and Lands Conservancy" and delivered to Rivers and Lands Conservancy, c/o David Brunner, Executive Director, 6876 Indiana Avenue, Suite J-2, Riverside, CA 92506.  The payment to the Rose Foundation shall be made via check made payable to the "Rose Foundation for Communities & the Environment" and delivered to: Rose Foundation, 201 4th St. Ste. 102, Oakland, California 94607. Defendant shall provide Waterkeeper with a copy of such payment and copy Waterkeeper and its attorneys on any related correspondence.

29.  <u>Waterkeeper's Fees and Costs</u>. To partially reimburse Waterkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating resolution of this matter, Defendant shall pay a total of Ninety Thousand Dollars ($90,000) within forty-five (45) days of the Effective Date delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

30.     <u>Stipulated Payment</u>. Defendant shall make a stipulated remediation payment of $1,000 (one thousand Dollars) for any and each missed deadline specified in this Consent Decree not previously extended in writing by the Settling Parties. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Defendant's discharges and shall be made to the Rivers and Lands Conservancy identified above and delivered via check or wire transfer. Defendant agrees to make the stipulated payment within forty-five (45) days of the missed deadline. Defendant shall provide Waterkeeper with a copy of each such payment at the time it is made.

31.     <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed to Waterkeeper under this Consent Decree that Waterkeeper does not receive by the due date. The interest shall accrue starting the first day after the payment was due and shall be computed at a rate of 1.5% per month (18% per year).  Interest on late payments shall be made payable to Waterkeeper and delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

## III.   <u>DISPUTE RESOLUTION</u>

32.     <u>Court Enforcement Authority</u>. This Court shall retain jurisdiction over this matter for the life of this Consent Decree for the purposes of enforcing the terms and conditions, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

33.     <u>Meet and Confer</u>. A Settling Party shall invoke the dispute resolution procedures of this Section [III] by notifying all other Settling Parties in writing of the matter(s) in dispute and the disputing party's proposal for resolution. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days from the date of the notice in an attempt to fully resolve the dispute within thirty (30) days. The Settling Parties may elect to extend this time in an effort to resolve the dispute

without court intervention.

34. <u>Formal Resolution</u>. If the Settling Parties cannot resolve a dispute through the meet and confer process discussed above, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

35. <u>Fees and Costs</u>. If intervention by the District Court is required, civil penalties and litigation costs and fees incurred in conducting the meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing or substantially prevailing party in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365(d) and 1319(d).

## IV.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

36. <u>Waterkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives, hereby releases Defendant and each of their current and former officers, directors, members, employees, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives) of and from, and waives all CWA claims which were or could have been asserted in Waterkeeper's Complaint up to and including the Termination Date of this Consent Decree.

37. <u>Defendant's Release</u>. Upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of its successors and assigns, and their agents, attorneys, and other representatives, hereby releases Waterkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) of and from, and waives all claims which arise from or pertain to this action, including all claims for

fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed for matters related to, or which could have been asserted in response to, Waterkeeper's Complaint up to and including the Termination Date of this Consent Decree.

38.     No Limitation of Advocacy Rights. Nothing in this Consent Decree limits or otherwise affects Waterkeeper's rights, including during the term of this Consent Decree, to address or take any position it deems necessary or appropriate in formal or informal proceedings before the State Water Board, Regional Water Board, any other regulatory agency, or any other judicial or administrative body on any other matter relating to Defendant's compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of the Consent Decree, except that Waterkeeper shall advise Defendant in advance, either in writing or via electronic means, of its intention to engage in such advocacy, the nature of the event, the date, time and location of the event, and the general subject matter of its presentation.

## V.     **MISCELLANEOUS PROVISIONS**

39.     No Admission of Liability. Neither this Consent Decree, the implementation of additional BMPs, nor any payment made pursuant to this Consent Decree shall constitute or be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or liability, nor as an admission of violation of any law, rule, or regulation.

40.     Force Majeure. No Settling Party shall be considered to be in default in the performance of any of its respective obligations under this Consent Decree when performance becomes impossible due to an event of Force Majeure. Force Majeure includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, pandemic (other than COVID-19), sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or

postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

41.     <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

42.     <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

43.     <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

44.     <u>Correspondence</u>. All documents and/or notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by electronic mail or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or courier, as follows:

<u>If to Plaintiffs:</u>

Orange County Coastkeeper & Inland Empire Waterkeeper
Attn: Legal Department
Email: <u>Sarah@coastkeeper.org</u> & <u>Lauren@coastkeeper.org</u>
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626

<u>If to Defendant</u>:

Lorilei Cronin
Counsel
Commercial Metals Company
6565 N. MacArthur Blvd., Suite 800
Irving, TX 75039
Lorilei.Cronin@cmc.com

<u>With a copy to</u>:

Margaret Rosegay
Partner
Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111
Margaret.Rosegay@pillsburylaw.com

Any change of address or addresses shall be communicated in the manner described above for giving notices. Notifications of communications shall be deemed submitted immediately after acknowledgement of receipt via email by the receiving party or the next business day after having been deposited with an overnight mail/delivery service except in the case of notification of payment of stipulated penalties, which shall be deemed paid on the date Defendant notifies Waterkeeper that payment has been made.

45.   <u>Effect of Consent Decree</u>. Nothing in this Consent Decree shall be construed to affect or limit in any way Defendant's obligation to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree. Compliance with this Consent Decree shall not be deemed to constitute compliance with the Storm Water Permit, the Clean Water Act, or any other law, rule, or regulation.

46.   <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

47.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, extended, or terminated unless by a written instrument, signed by the Settling Parties and approved by the Court. Unless

otherwise specified herein, any request to modify any provision of the Consent Decree, including, but not limited to, any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

48.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

49.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and/or ambiguity shall not be interpreted against any one party.

50.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

51.    <u>Authority</u>. The undersigned representatives for Plaintiffs and Defendant each certify s/he is fully authorized by the party whom s/he represents to enter into the terms and conditions of this Consent Decree. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

52.    <u>Assignment</u>. All of the rights, duties, and obligations contained in this Consent Decree shall apply to and bind the Settling Parties, and any successors or assigns. Defendant shall notify Plaintiffs within ten (10) days of any assignment.

53.    <u>Validity</u>. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____, 2021          By: _____
                                       Garry Brown
                                       Inland Empire Waterkeeper & Orange
                                       County Coastkeeper


Dated: _____, 2021          By: _____
                                       Chris Stowers
                                       Director of Fabrication (West Regio

APPROVED AS TO FORM

                                       ORANGE COUNTY COASTKEEPER
                                       INLAND EMPIRE WATERKEEPER

Dated: _____, 2021          By:_____
                                       Sarah Spinuzzi
                                       Attorney for Plaintiffs

                                       PILLSBURY WINTHROP SHAW
                                       PITTMAN LLP

Dated: _____, 2021          By: _____
                                       Margaret Rosegay
                                       Attorney for Defendant


**IT IS SO ORDERED.**                  UNITED STATES DISTRICT COURT
                                       CENTRAL DISTRICT OF CALIFORNIA



Date:  September 22, 2021              _____
                                       Honorable James V. Selna